[No. 20665.   In Bank. — July 8, 1890.]

## THE PEOPLE, RESPONDENT, *v.* BENJAMIN TILEY, APPELLANT.

CRIMINAL LAW — BURNING INSURED PROPERTY — EVIDENCE — DISCREDIT-ING WITNESS BY PARTICULAR ACTS OF IMMORALITY. — Upon the trial of a defendant accused of burning insured property, if the keeper of a house of ill-fame has testified to certain damaging statements made by defendant at her house both before and after the fire, and the defendant, when called as a witness in his own behalf, denied the statements, while admitting that he may have been at such house at the dates testified to, he cannot be asked on cross-examination, for the purpose of discrediting him and degrading his character, whether he did not remain all night at that house upon a certain date, some six months after the fire.

EVIDENCE — IMPEACHMENT OF WITNESS — CROSS-EXAMINATION UPON IRRELE-VANT OR COLLATERAL MATTERS. — A party cannot cross-examine his adversary's witness upon irrelevant or collateral matters for the purpose of eliciting something to contradict or impeach him; and the court should stop the inquiry there, if such matters are drawn out, and not allow contradictory evidence to be introduced in rebuttal.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion.

*Peck & Taylor*, for Appellant.

*Attorney-General Johnson*, for Respondent.

BELCHER, C. C. — The defendant was convicted of the crime of " burning insured property," with intent to injure and defraud the insurers, and he appeals from the judgment, and an order denying him a new trial.

The property burned was a two-story wooden building and its contents, situate just outside of the limits of the city of San Bernardino, and known as the Arctic saloon building. It was owned by the defendant and one Myers, and the lower story was used by them as a saloon, and the upper story as a lodging-house. The building was insured for one thousand dollars, and the furniture, stock,

and fixtures for a like sum.   The fire occurred between one and three o'clock in the morning of January 1, 1889.

The defendant was not at the saloon at the time the fire was started, and had not been there for some hours before.   He could not therefore himself have set the fire. This was not controverted at the trial, but it was claimed that he must have procured some one else to set it.

The evidence against the defendant was wholly circumstantial, and most of it was admitted against his objections and exceptions.   Among other items of evidence objected to were the following: The prosecution called as a witness a woman known as Josie McFarland, who testified that she was a "sporting lady," and kept a "sporting-house" in the city of San Bernardino.   She then proceeded to relate certain conversations, tending more or less to criminate defendant, some of which she said she had with him at her house eight or ten days before, and some eight or ten days after, the fire.   The defendant was called as a witness in his own behalf, and denied that he had the conversations or made the statements related by the witness Josie, but admitted, on cross-examination, that he might have been at her house at the times named by her.   The following questions were then asked and answered: —

"Q. When was the last time that you was at Josie McFarland's ?   A. The 5th of July.

"Q. How long did you stay there when you were there?   A. I was there probably fifteen minutes.

"Q. Now, I will ask you the direct question: Didn't you stay there all night on the night of the 4th of July, 1889?   A. I did."

The objection to the last question was, that it was "irrelevant, incompetent, and immaterial, and not responsive to the examination in chief, and not proper cross-examination, and is asked simply for the purpose of having a tendency to degrade the character of the witness."

It is now urged for the appellant that his objections to each of the foregoing questions should have been sustained, and that the rulings against him operated to his manifest prejudice.

That the rulings were erroneous is too clear, in our opinion, to admit of debate. The defendant was a married man, and the fact that he went to and remained overnight in a house of ill-fame was greatly to his discredit, and undoubtedly tended to prejudice the jury against him. It did not, however, tend in the slightest degree to show that he caused his saloon to be burned six months before, or that he ever made any admissions relating thereto. The evidence must have been offered for the sole purpose of discrediting the witness; but for that purpose, or any other, it was clearly incompetent and inadmissible. (*Sharon* v. *Sharon,* 79 Cal. 674.)

The prosecution also called as a witness one James Tye, who testified, among other things, that he was tending bar for Tiley and Myers during the last days of December, 1888; that at the time of the fire he was present in the bar-room of the Arctic saloon, and that he knew a man by the name of Brock O'Neal. He was then asked and answered as follows: —

"Q. Was he there at the time of the burning of the saloon? A. Yes, sir; he was there; he was there ten minutes before the burning of the building.

" Q. What was he doing there? A. He was shaking dice with me about ten minutes before the fire. He was in the saloon at the time of the fire; I, at least, saw him during the burning of the saloon.

"Q. Had he any relations there, or not, with Ben ₒ Tiley? A. I don't know whether he had anything to do with Mr. Tiley.

"Q. Had you done anything, as a go-between, between him and defendant before the fire, within a day or two ? A. I brought him a package.

" Q. Where did you get that package?  A. From the Calico saloon.  Mr. Tiley told me he had a package for to give Brock O'Neal, for me to take it down.  I took it down, and don't know whether I gave it to him, or told him where it was.  This was a few days before the fire. At the time he gave me the package he wanted to know who was hanging around there, and I told him, and among others I mentioned the name of Brock O'Neal. The package was a small soda-water bottle.  It had in it a whitish liquid; in my judgment it resembled water. I don't know what was in it."

The defendant, in his examination in chief, testified that he never set the fire, or caused it to be set, and never had any knowledge whatever as to the cause of the fire; and that he never sent to Brock O'Neal any bottle or package by James Tye, or any one else.

On cross-examination, he was asked: —

" Q. You know Brock O'Neal, don't you?  A. Yes, sir.

" Q. How long have you been acquainted with him ? A. I have been acquainted with him only a little while.

"Q. How long had you been acquainted with him before that fire?  A. Five or six days.

" Q. Now, then, I will ask you as a question on this trial, how long did you know Brock O'Neal before the fire occurred at the depot last January ?  A. How long did I know him before the fire ?  I should judge five or six days; it might have been up as high as seven, but not outside of that.

" Q. And no longer ?  A. No, sir.  I never saw him before."

In rebuttal, the prosecution called two witnesses to prove that the defendant had known O'Neal for a considerably longer time than that stated by him on his cross-examination.  This testimony was objected to, "on the ground that it is not proper rebuttal testimony; on the further ground that it is irrelevant and immaterial; if it is asked for the purpose of impeaching the

defendant, it is wholly upon a collateral and immaterial matter, and the proper foundation has not been laid."

The objections were overruled, and these rulings are assigned as error.

We are unable to see that this rebuttal testimony was relevant or material for any purpose, other than to discredit and impeach the defendant. But, as said in *People* v. *Dye*, 75 Cal. 112: "A party cannot cross-examine his adversary's witness upon irrelevant matters, for the purpose of elicting something to be contradicted. And if such matters are drawn out, the court should stop the inquiry there. It is well settled that a witness cannot be impeached by contradicting him upon collateral matters." In our opinion, the rulings complained of were erroneous, and the evidence thus wrongly admitted tended to prejudice the defendant before the jury.

Other errors are assigned, but we do not think it necessary to notice them particularly. For the errors above noted, we advise that the judgment and order be reversed, and the case remanded for a new trial.

Hayne, C., and Foote, C., concurred.

The Court. — For reasons given in the foregoing opinion, the judgment and order are reversed, and the case remanded for a new trial.