[Crim. No. 107.   Department One.—May 28, 1896.]

THE PEOPLE, RESPONDENT, *v.* WILLIAM MANN, APPELLANT.

CRIMINAL LAW — ATTEMPT TO COMMIT GRAND LARCENY —"BUNCO" GAME.—Where one accused of an attempt to commit grand larceny is shown to have made an effort in pursuance of a preconceived plan to deprive another person of a large sum of money by the use of the confidence game known as "bunco," he is properly found guilty of the offense charged, though such plan failed of consummation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WILLIAM T. WALLACE, Judge.

The facts are stated in the opinion of the court.

*Reel B. Terry,* for Appellant.

The evidence in this case fails to show that any public offense was committed. There was at most, only preparation for an attempt to commit a crime. (*People v. Murray,* 14 Cal. 159.)

*W. F. Fitzgerald, Attorney General, Henry E. Carter, Deputy Attorney General,* and *Charles H. Jackson, Deputy Attorney General,* for Respondent.

The facts of the case make out a manifest attempt under the reasoning of the cases of *People* v. *Murray,* 14 Cal. 159, and *People* v. *Stites,* 75 Cal. 570; Bishop on Criminal Law, sec. 725; *Regina* v. *Cheeseman,* Leigh & C. 140; *People* v. *Shaughnessy,* 110 Cal. 598; *People* v. *Moran,* 20 Am. St. Rep. 741–48, note.

GAROUTTE, J.—The defendant was convicted of the offense of "an attempt to commit grand larceny." It is now insisted that the evidence is insufficient to support the verdict of the jury, and this brings us to a consideration of the sole question involved in the case, and that is as to the amount and character of evidence necessary to constitute the offense of attempt to commit

grand larceny. It is practically admitted that, if the
defendant had finally been successful in securing the
money of the prosecuting witness Manino, the offense
would have been grand larceny. But his hopes and
plans in that direction were never consummated, hence
a larceny was not committed. And it is now insisted
by defendant that his schemes, artifices, and acts look-
ing toward his possession of Manino's money had not
progressed to that point of constituting the offense of
attempt to commit grand larceny, when the prospective
victim became alarmed, and defendant's labors went for
naught.

The facts are interesting, though the tale has often
been told in courts of justice. Manino had four thou-
sand dollars in bank and was desirous of investing in
the saloon business. The defendant, a stranger, casu-
ally met him, and suggested that he also would like to
go into the saloon business, and proposed a partnership.
A friendly acquaintance arose between them; Manino
was compelled to leave the city for a few days; upon his
return defendant immediately called upon him, and sug-
gested the purchase of another place upon better terms
than the one they had previously had in view. They
went to a distant portion of the city and viewed the
proposed purchase, and upon their return, when oppo-
site 125 O'Farrell street, the following occurred, as
shown by the testimony of the witness Manino:

"He stopped and said: 'I have some tickets in a lot-
tery, and I will go in and see if I have won anything.'
We went in. There was a man behind a counter. The
defendant produced some lottery tickets, and the man
behind the counter, after looking at a printed list of
numbers, said: 'You have won one hundred and ten
dollars,' and handed the money to defendant. Defend-
ant said: 'Give me ten dollars worth of tickets,' and
then asked me to try my luck. I pulled out some cards
or tickets from a pack handed me, and the man behind
the counter said: 'You are very lucky. You have won
four thousand dollars—two thousand dollars for you,

and two thousand dollars for your friend.' I was very much excited and said: 'Give me the money.' He said: 'It is a rule of this house not to give money to irresponsible people. You must show that you have an equal amount of money before you can get it.' I said: 'I will get the money. When will I come back?' He said: 'One o'clock.' I said: 'I am afraid that I can't be back by that time. Make it half-past one.' I said: 'Come on, Miller [defendant], can you get your two thousand dollars?' He said: 'That is all right. I have plenty of money,' and showed me some checks. We went as fast as we could to my home, and I told my wife to hurry up, and come to the Hibernia bank and get the money, as I had won four thousand dollars, and had to show that much. She changed her dress, and she, Miller, and I, and the old man, John Ciaco, started for the bank. Miller did not go into the bank with us. He waited outside. My wife drew the money, four thousand dollars, and the cashier put it in a bag and handed it to me, and I handed it to my wife. We started for O'Farrell street. My wife handed the money to the old man to carry. We hurried up and got to the place. The man who had been there in the morning was not there. There was another man there. I asked him where the man who was there in the morning was. He replied that he had gone to the bank to get the money, and would not be back until 3 o'clock. I asked him for a receipt to show that I had got back before 1 o'clock. He wrote a receipt that I was back before one. I again asked for the money. He told me to wait. My wife asked for a drink of water. He told her it was against the rules to have women in the house. He told her to give me the money and go. Miller, the defendant, also told her. She said: 'I think there is some trick here, and I am going,' and told me to come on. Defendant, my wife, myself, and the old man went outside. I said: 'Miller, I think this is a trick, and if it is, I will prosecute you.' He said: 'Oh, no, I know these people, and they treated us nicely this morning.'"

This recital of the facts makes it plain to a certainty that defendant was doing his best to defraud Manino of his money. Defendant was playing a confidence game, and "bunco" is its name. (See definition of "bunco" in Century Dictionary.) That Manino was not buncoed out of his money is attributable to his good wife rather than to his good sense.

If defendant had secured the possession of this money to the loss of Manino, it would have been grand larceny. Did he so attempt to secure the possession of it? If so, he is guilty as charged. That the acts he did in pursuance of a preconceived plan constituted an attempt, we have no doubt. An attempt is defined as an effort or endeavor; an act tending toward the accomplishment of a purpose which exceeds a mere intent or design, and falls short of an execution of it. (3 Am. & Eng. Ency. of Law, 97.) Justice Blackburn said in *Regina* v. *Cheeseman*, Leigh & C., 140: "There is no doubt a difference between the preparation incident to the offense and the actual attempt; but, if the actual transaction has commenced which would have ended in the crime if not interrupted, there is clearly an attempt to commit the crime." In *People* v. *Stites*, 75 Cal. 570, the question as to what in law was sufficient to constitute an attempt was learnedly discussed, and, in that case, upon facts which for legal strength are in no degree comparable to those presented by this record, the defendant was held guilty under the evidence of an attempt to commit a felony.

For the foregoing reasons the judgment and order are affirmed.

VAN FLEET J., and HARRISON, J., concurred.