[Crim. No. 170.   Third Appellate District.—February 1, 1912.]

THE PEOPLE, Respondent, v. HARRY PALUMA,
Appellant.

CRIMINAL LAW—ATTEMPT TO COMMIT GRAND LARCENY—NATURE AND
PROOF OF CRIME CHARGED.—Under a charge of an attempt to com-
mit grand larceny, when the *animus furandi* exists, followed by acts
apparently affording a prospect of success, and tending to render
the commission of the crime effectual, the accused brings himself
within the letter and intent of the statute.   When there is a person
from whom the property may be taken, an intent to take it against
the will of the owner, and some act performed tending to accom-
plish it, the crime is committed, whether the property could in fact
be taken or not.

ID.—NATURE OF ATTEMPT TO COMMIT CRIME.—An attempt to commit
a crime, in general, involves an intent and endeavor to accomplish
a crime, carried beyond mere preparation, and combined with an
act which falls short of the thing intended.   Mere intention to com-
mit a specific crime does not of itself amount to an attempt to
commit it; but there must be, in addition to the wicked intent,
some act done toward its ultimate accomplishment.

ID.—SUPPORT OF VERDICT FOR OFFENSE CHARGED.—It is held, upon a re-
view of the evidence, that it is sufficient to support the verdict of
conviction of the defendant of the crime of an attempt to commit
grand larceny as charged in the information.

APPEAL from a judgment of the Superior Court of
San Joaquin County, and from an order denying a new trial.
J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Carlton C. Case, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Dep-
uty Attorney General, for Respondent.

BURNETT, J.—Appellant, jointly charged with one Louis
Forrester with an attempt to commit grand larceny, was con-
victed on a separate trial and sentenced to the penitentiary
for four years, and he appeals from the judgment and the
order denying his motion for a new trial.   The only point

concerning which there can be any controversy—in fact, the only contention seriously urged by appellant—is that the evidence is insufficient to warrant the verdict. In this respect it is not claimed that there was a failure to show the purpose or preparation on the part of defendant to commit the crime of grand larceny, but it is argued that there was no overt act sufficient to constitute an *attempt* within the contemplation of law. The statute does not prescribe what steps shall be construed as an attempt to commit a crime, yet it makes provision for its punishment. There is no difficulty, however, in determining the meaning of the expression, although its application to the particular facts of each case may not be so easy.

As stated by Bouvier, in criminal law an attempt is "an endeavor to accomplish a crime carried beyond mere preparation, but falling short of execution of the ultimate design in any part of it." "An intent to do a particular criminal thing combined with an act which falls short of the thing intended." "An act immediately and directly tending to the execution of the principal crime, and committed by the prisoner under such circumstances that he has the power of carrying his intention into execution, including solicitations of another."

In *People* v. *Moran*, 123 N. Y. 257, [20 Am. St. Rep. 732, 10 L. R. A. 109, 25 N. E. 412], it is said: "Whenever the *animo furandi* exists. followed by acts apparently affording a prospect of success and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. To constitute the crime charged there must be a person from whom the property may be taken; an intent to take it against the will of the owner and some act performed tending to accomplish it, and when these things concur, the crime has, we think, been committed whether property could, in fact, have been taken or not."

The question of what constitutes an attempt is elaborately considered in *People* v. *Stites*, 75 Cal. 570, [17 Pac. 693]. Therein it is said that "Mere intention to commit a specific crime does not itself amount to an attempt as that word is employed in the criminal law. There must, in addition to the wicked intent—the *mens rea*—be some act done toward the ultimate accomplishment of the proposed crime." In as-

certaining whether such act has been accomplished, it is further declared that "the proximity or remoteness of the person or thing intended to be injured is generally an important element, as the adjudicated cases will show," and quotation is made from Blackburn, J., in *Regina* v. *Cheeseman,* Leigh & C., 140, that "If the actual transaction has commenced which would have ended in the crime if not interrupted, there is clearly an attempt to commit the crime."

We are entirely satisfied that, within the purview and spirit of the foregoing, the defendant was justly convicted as charged in the information. A brief statement of the evidence will make this apparent.

Appellant and his codefendant came to Stockton on the same train and stopped at the same hotel. Two or three days later appellant took a pair of shoes to one De Martini, who was engaged in the shoe business on California street in said city, and left them to be half-soled. He engaged Mr. De Martini in conversation, speaking in the Italian language. He asked about the business and suggested that De Martini ought to have a larger stock and take a partner to put in more money, that the business might be enlarged. The proprietor replied that he didn't care about a partner, that he was doing very well as it was. Paluma then took a paper out of his pocket and, reading about a man that played the valise game and secured some money, he said: "I don't know what the valise game is," and he asked De Martini what it was. The latter replied that he didn't know, but he proceeded to explain the game as he understood it. Appellant then left the store and did not return until the next day. He remained then only a short time. He was asked if he wanted the shoes, but he said no, that he would get them the next day. He came back the next morning and had been there a few minutes when the codefendant, Forrester, arrived and tried to get in at the wrong door and appellant let him in at the proper entrance. Forrester inquired if they spoke Italian, and, being answered in the affirmative, he asked to be directed to the "Imperial Hotel," stating that he had just come in on the train and had missed his way. De Martini gave him the information. Forrester then told Paluma an interesting story, whose details we need not recite, and he then produced a twenty-dollar gold piece and said to De

Martini, "I will give you twenty dollars to show me where the hotel is," but appellant responded that he would show him as a favor. They then went out, but they did not go to the hotel. In about fifteen minutes Paluma returned and, after waiting for the departure of a Mr. Orsi, who was in the store, he said to De Martini: "I had good luck this morning. I made twenty dollars to go from here over to the Imperial Hotel," and he unfolded a plan of Forrester to distribute $10,000 among the poor of Stockton and to employ two men for the purpose and appellant said that he was to be one, and furthermore, "if you want to you can make the other party. He will give us twenty dollars a day for every day we spend in that pursuit and besides he will double all the money you got. He wants to know the men are responsible, and in order to show responsibility you got to show him some money. If you can show $500, why besides giving you twenty dollars a day for the time you lose he will double your money, he will make you a present of $500." De Martini said he had no money that morning, but would try to get some from his friends if they would wait till the next day, but he was urged by appellant to get it that afternoon as someone else might get in. De Martini said he would try. Appellant said they would be back that afternoon. He then went out and, shortly after 12 o'clock, both returned and Forrester submitted the same proposition and then, or on a previous occasion, he pulled out a package from his pocket wrapped in manila wrapping paper, about the size of a greenback and two inches thick, and showed a greenback or two and said that the package was full of that kind. Paluma asked De Martini if he had any money in the bank, and the latter said "Yes." About this time a police officer came in and asked what appellant and his confederate were doing. No reply was made, and he then asked Paluma if he intended to get his shoes, and the reply was: "I guess not." The two were then placed under arrest. Forrester thereafter undid this package while it was in his pocket and took the paper out and threw it in the waste basket. Two handkerchiefs were found in his pocket. One of them he took out and unfolded, but the other was found folded about the size of a greenback. Each of the defendants was found to have in his possession a big, long,

blue, cloth-lined envelope and an empty black bag just alike. It seems very clear that the defendants were acting according to a prearranged plan and, as said in *People* v. *Mann*, 113 Cal. 79, [45 Pac. 183], they were "playing a confidence game, and 'bunco' is its name." That Mr. De Martini was not "buncoed" out of his money was not due to any penitence or abandonment of their plan by defendants, or either of them. They did everything they could toward the accomplishment of their felonious purpose. The visit to the store of the prosecuting witness under the circumstances detailed, the false and alluring representations that were submitted to him and the efforts made to induce him to exhibit his money and to fall into the snare so deliberately and cunningly devised for him, constitute an attempt within any reasonable view of that term. Appellant says the whole thing was a "joke," but such jokes are rather too frequent to be encouraged by adopting the exceedingly technical construction of the law which has been urged upon us. The manifest rascality of appellant certainly does not invite overnice distinctions in his favor.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.