[Crim. No. 340.    Second Appellate District.—September 1, 1914.]

## THE PEOPLE, Respondent, v. ROBERT GILMORE, Appellant.

CRIMINAL LAW—ATTEMPT TO COMMIT LARCENY—SUBSTITUTION OF BOGUS RING FOR GENUINE ONE IN SHOW CASE.—Where one enters a jewelry store, asks to be shown a tray of diamond rings, and while looking at them attempts to substitute a bogus ring in place of a good one in the tray, but, being detected, abandons his purpose and seeks safety in flight, he may be convicted of grand larceny.

APPEAL from a Judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Frank A. McDonald, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

SHAW, J.—Defendant was charged with the crime of grand larceny, and upon trial was convicted of an attempt to commit the offense with which he was charged.

He appeals from the judgment and an order of court denying his motion for a new trial.

The only ground upon which a reversal is asked is that the evidence is insufficient to sustain the verdict.

A brief statement of the case shows appellant's contention to be wholly without merit. No evidence was offered on behalf of defendant. That offered on behalf of the people shows that during the noon hour on December 18, 1913, defendant, with a companion named Isenberg, entered the jewelry store of O. L. Wuerker, in Los Angeles, stating to Mr. Willard, manager of the store, that they desired to look at some diamond rings. Mr. Willard then took from the show-case a tray of diamond rings and exhibited them to defendant and Isenberg, who, after looking them over, indicated that none of them was satisfactory, defendant suggesting that they be shown a tray of rings which was in the show-window. Mr. Willard replaced the tray of rings taken from the show-case and brought out the tray from the window. From this tray Isenberg selected a ring priced at ninety dollars, saying he would make a deposit of two dollars upon it. Defendant meanwhile was looking at a ring from the tray priced at two hundred and eighty-five dollars. As Willard reached for an envelope wherein to place the ninety dollar ring selected by Isenberg, and while defendant was looking at the two hundred and eighty-five dollar ring, he (Willard) saw in the tray containing the rings an imitation diamond ring in size similar to the two hundred and eighty-five dollar ring, the latter not being in the tray. Willard picked up the tray and, as he returned it to the show-case, took therefrom the bogus diamond and said: "I don't want this ring; come on, give me the good ring, and do it quick. You can't do that to me here. . . . I don't want your $2. . . . I shoved the $2 back to him and I took the $90 ring. He says, 'What do you mean by that?' I says, 'I mean you got to pay for that ring or give it to me quick.' As I said that, why Mr. Gilmore starts and turned around and run, and Mr. Isenberg. So I went out after them just as hard as I could go." At the door defendant and Isenberg separated, one going north and one south. Willard followed Isenberg, and a gentleman who was entering the store followed defendant, who ran north to Second and Spring streets, thence to Broadway, thence south to the middle of the block, where he was caught and turned over to an officer. Willard further

testified that in place of the good ring, defendant placed in the tray a bogus ring of the same size. Both defendant and Isenberg were taken back to the store by officers, and upon being searched the imitation ring was taken from Gilmore's pocket, and later two other imitation diamond rings were found under the show-case near where Isenberg and defendant had been standing. When Willard ran out of the store to intercept defendant and Isenberg, another employee of the store, whose attention was attracted by the trouble, went to that part of the store where Willard had been exhibiting the rings and, reaching for the pad used in exhibiting diamonds, discovered the ring which is alleged to be the subject of the larceny. He stated that owing to the fact that a customer was standing against the show-case where this pad was, he was unable to say whether the ring was on top of the pad or underneath it. From this statement of facts disclosed by the evidence, and other circumstances indicative of guilt, it is impossible to perceive how the jury could have reached any other conclusion than that an attempt, as defined in section 664 of the Penal Code, and *People* v. *Mann,* 113 Cal. 79, [45 Pac. 182], was made to steal the ring. Defendant's failure to accomplish his intended purpose was clearly due to Willard's discovery of the bogus diamond placed in the tray as a substitute for the genuine one which defendant at the time had in his possession. Having been detected in the act, he abandoned his unlawful purpose and sought safety by fleeing.

The judgment and order are affirmed.

Conrey, P. J., and James, J., concurred.