[Crim. No. 389. Third Appellate District.—January 22, 1917.]

In the Matter of the Application of BARNEY MAGIDSON, for a Writ of Habeas Corpus.

CRIMINAL LAW—ATTEMPT TO RECEIVE STOLEN PROPERTY—PROOF OF IN-TENT AND OVERT ACT.—A charge of an attempt to commit the crime of receiving stolen goods is sufficiently established by proof that the accused, when told that stolen copper wire was hidden in a certain place, hired a vehicle, procured some canvas to cover the wire, and then went to the place where the property had been cached, and where he believed it to be, with the intention of taking it away.

ID.—IMPOSSIBILITY TO TAKE PROPERTY—PREVIOUS DISCOVERY AND RE-MOVAL BY POLICE OFFICERS — IMMATERIAL CIRCUMSTANCE.— The criminal nature of such a charge is not affected by the fact that it was impossible to receive the stolen property, by reason of the fact that it had been previously discovered by the officers of the law, removed from its place of secretion, and returned to the owner.

APPLICATION for a Writ of Habeas Corpus originally made to the District Court of Appeal for the Third Appellate District.

The facts are stated in the opinion of the court.

Harry Ellis Dean, for Petitioner.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Petitioner seeks his discharge on the ground of the want of probable cause for the order made by a committing magistrate holding him to answer to the superior court to the charge of an attempt to receive stolen property. There is no contention of any lack of intent to commit the crime. Indeed, as to that the evidence seems clear and convincing. It is claimed, however, that the showing made extends no farther than to reveal the intent and some degree of preparation, but falls short of disclosing an overt act necessary to complete the offense charged.

Quite a quantity of copper wire had been stolen and secreted in a certain park near the city of Stockton. One of the thieves saw petitioner standing in front of an empty building looking at some junk contained therein, and asked

him "if he was buying any copper." He responded in the affirmative, inquired how much there was and, after some discussion as to the price, petitioner agreed to purchase it. He was told that it was stolen property and where it was concealed. The informant advised him to get an automobile or a horse and wagon and go out after the wire and also some sacks, blankets, or canvas with which to cover the loot. Petitioner agreed, and he did secure a horse and a light wagon from a livery-stable and some canvas from a store and loaded the same into the conveyance and, thus equipped and in company with said thief, he proceeded on his journey from the livery-stable in the direction of and to the place where said property had been secreted. He looked about for the stolen property, but was disappointed, as it had been previously discovered and removed by the police. It thus appears that he had the criminal intent, and not only made preliminary preparations, but he went to the very place where the property had been cached, and where he believed it to be at the time, and he was ready and prepared to receive and take it away. The manual tradition of the property was the only thing left to constitute the crime of receiving stolen goods. There certainly existed the two elements of an attempt, namely the *intent* to commit the crime and a direct ineffectual *act* done toward its commission. The case falls within the spirit and reasoning of the appellate decisions in this state. The subject is elaborately considered in *People* v. *Stites,* 75 Cal. 570, [17 Pac. 693]. Therein it is said: "Mere intention to commit a specific crime does not itself amount to an 'attempt' as that word is employed in the criminal law. There must, in addition to the wicked intent—the *mens rea*—be some act done toward the ultimate accomplishment of the purposed crime. But even such acts do not always of themselves amount to an attempt, or to an offense of which human laws will take cognizance, for if they be but acts of preparation, however elaborate, our municipal law would not assume to deal with them. For instance, the construction of the dynamite bomb by the persons at his home on the night of the fifteenth of February, with the declared intention on his part to employ it the next morning in destroying the lives and property of others, atrocious as it was, and indefensible *in foro conscientiae,* was but an act of preparation, and

when perfected did not render him amenable to the municipal law as then existing, or punishable by its rules. *But when the prisoner left his house* on the morning of the 16th day of February *and went to Turk street,* pursuant to the antecedent arrangement between his confederate and himself, it amounted to an overt act done by him for the purpose of effecting the crime intended, and was in law and fact a criminal attempt.'' So here, it may be said that if petitioner had simply agreed to take the goods, and had obtained a conveyance and canvas and had done no more it would not be sufficient, but when he drove to the place where the goods had been concealed he committed the overt act that made the offense complete.

In this connection reference may be had to the interesting cases of *People* v. *Paluma,* 18 Cal. App. 131, [122 Pac. 431], and *People* v. *Petros,* 25 Cal. App. 236, [143 Pac. 246], wherein it was held that the evidence showed an ''attempt'' within the contemplation of the law. The facts disclosed therein were no more striking and significant as evidence for such purpose than are the facts in the case here.

Probably a more serious question arises out of the contention that there could be no ''attempt,'' for the reason that when the effort was made it was impossible to commit the crime itself. In other words, before petitioner drove to the place where the goods had been secreted the police officers had taken possession of them. It is therefore argued that the offense was impossible, not only because the goods had been removed, but because they were taken out of the category of stolen goods by having been virtually restored to the owner through the action of said officers. However, there is no necessary infirmity in the contention that there may be a criminal attempt, although the consummation of the attempt may be impossible, and there is ample authority for holding that such attempt may exist under such circumstances. In *People* v. *Lee Kong,* 95 Cal. 666, 668, [29 Am. St. Rep. 165, 17 L. R. A. 626, 30 Pac. 800], it is said: ''It is a well-settled principle of criminal law in this country, that where the criminal result of an attempt is not accomplished simply because of an obstruction in the way of the thing to be operated upon, and these facts are unknown to the aggressor at the time, the criminal attempt is committed. Thus an attempt to pick one's pocket, or to steal from his

person, when he has nothing in his pocket or on his person, completes the offense to the same degree as if he had money or other personal property which could be the subject of larceny. (*State* v. *Wilson,* 30 Conn. 500; *Commonwealth* v. *Mc-Donald,* 5 Cush. (59 Mass.) 365; *People* v. *Jones,* 46 Mich. 441, [9 N. W. 486]; *People* v. *Moran,* 123 N. Y. 254, [20 Am. St. Rep. 732, 10 L. R. A 109, 25 N. E. 412].)''

In the Wilson case, *supra,* it is said: ''There must undoubtedly be present ability to perpetrate the offense. . . . But it is not true that the thing intended to be taken must be where the attempting thief supposes it to be or that there must be in fact property where he supposes there is. It is sufficient if he supposes there is property in the pocket, trunk or other receptacle, and attempts by some act adapted to the purpose to obtain it feloniously.''

In the McDonald case, *supra,* this language appears: ''But it was said in argument for the defendant that he could not be said to have attempted to steal the property of the unknown person, if there was no property to be stolen; and that therefore the indictment should have set out the property and shown the existence and nature of it by proof. But it will appear, at once, by simple reference to the import of the term 'attempt,' that this proposition cannot be maintained. To attempt is to make an effort to effect some object, to make a trial or experiment, to endeavor to use exertion for some purpose. A man may make an attempt, an effort, a trial, to steal, by breaking open a trunk and be disappointed in not finding the object of pursuit, and so not steal in fact. Still, he remains nevertheless chargeable with the attempt and with the act done towards the commission of the theft.''

In the New York case it is declared: ''Whenever the *animo furandi* exists, followed by acts apparently affording a prospect of success and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. . . . The question whether an intent to commit a crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design. So far as the thief is concerned, the felonious design and action are then just as complete as though the crime could have been, or in fact, had been committed, and the punishment of such offender is just as essential to the protection of the public, as of one whose designs have been successful.'' The court, after calling at-

tention to some English decisions to the contrary, continues: "In this country, however, the courts have uniformly refused to follow the cases of *Reg.* v. *McPherson* and *Reg.* v. *Collins* and have adopted the more logical and rational rule, that an attempt to commit a crime may be effectual, although, for some reason undiscernible by the intending perpetrator, the crime, under existing circumstances, may be incapable of accomplishment."

In the Jones case the supreme court of Michigan approved the McDonald decision, saying: "We think this is not only the better, but the only rule of law that could be adopted or recognized with safety to the rights of the public or of individuals."

There is a class of cases pointed out in *State* v. *Wilson, supra,* apparently similar to those herein considered, but clearly distinguishable where a different decision has been made. Thus where, with intent to defraud, a writing was falsely made which could not by legal possibility defraud anyone, it was held that no offense had been committed, because a person could not be legally presumed to intend that which was legally impossible, and where an attempt was made to poison with an article believed to be poisonous but which was in fact innoxious, and where an attempt was made to shoot a person with a pistol which was not in fact loaded, it was held that no offense had been committed, because no act had been done which was intrinsically adapted to the then present successful perpetration of the crime. (1 Bishop on Criminal Law, secs. 517, 518.) "Here the perpetration of the crime was legally possible, the persons in a situation to do it, the intent clear and the act adapted to the successful perpetration of it; and whether there was or was not money in the pocket was an extrinsic fact not essential to constitute the attempt."

So, in the case at bar, it was legally possible for petitioner to receive the stolen property. His intent to do so is entirely clear, he took the steps that were adapted to the successful accomplishment of it, and the circumstance that the said stolen goods had been removed involved an extrinsic fact not material to the crime of an attempt to commit said offense of receiving stolen property.

The writ is discharged and petitioner remanded.

Chipman, P. J., and Hart, J., concurred.