[Crim. No. 1189. Second Appellate District, Division One.—July 6, 1925.]

## THE PEOPLE, Respondent, v. WILLIS E. CARTER, Appellant.

[1] CRIMINAL LAW — LARCENY — INTENT—QUESTION FOR JURY.—In a prosecution upon an information charging defendant and another jointly with the commission of the crime of attempting to commit grand larceny, with a prior conviction of a felony, the question of defendant's intent to steal is one that must be solved by the jury.

[2] ID.—ATTEMPT TO STEAL AUTOMOBILE—EVIDENCE.—In such prosecution, the facts (as shown by the evidence) that defendant was seated in another's automobile, manipulating the levers thereof; that the starting motor was running; that he got out of the automobile and walked away when the owner of the automobile and another person approached him; that when "motioned" to and called upon to "wait a moment," as said owner wished to speak to him, after the owner and said person were joined by a uniformed policeman, he did not stop; that he so persistently ran away, even when called upon to stop or that the man who was following him would shoot; that he failed to stop even after a shot was fired; that he ran, not in a direct line, but in a devious course, along and upon different alleys, streets and through storerooms, in a manner evidently well calculated to elude and evade his pursuers; that as he ran he shouted "Stop thief"; that in his efforts to avoid arrest he struck at least one man in the face with sufficient force and violence to break the cartilage of his nose; that thereafter he continued to try to make his escape until intercepted and arrested by a police officer; and that he made inconsistent and contradictory statements regarding his connection with the affair—argue, if not conclusively, at least presumably, that he was guilty of the offense of attempting to commit grand larceny, as charged in the information.

[3] ID.—INTENT — ATTEMPT — ABANDONMENT. — While it is true that mere intent by a single individual to commit a crime is not sufficient to amount to a criminal act, it is also unquestionable that after the intent has been formed and such intent has been coupled with an overt act toward the commission of the contemplated

---

1. See 15 Cal. Jur. 907; 17 R. C. L. 25.
3. See 7 Cal. Jur. 881.

offense, the abandonment of the criminal purpose will not constitute a defense to a charge of attempting to commit a crime.

[4] ID.—OVERT ACT—ATTEMPT.—Mere preparation, however elaborate the acts in connection therewith may be, will not suffice to support an accusation of the commission of an overt act as an essential element in an attempt to commit a crime. Something must be done in addition to the mere laying of the plans or the devising of the means by which it is hoped that the criminal offense may be committed.

[5] ID.—ABANDONMENT—EVIDENCE.—In such prosecution, the jury was justified in believing from the evidence either that an attempt on the part of the defendant to steal the automobile had failed because of his inability to start it, or that he had taken fright and abandoned his criminal purpose for the reason that he feared detection and arrest by the owner of the car and another person whom he saw approaching the automobile as he was manipulating its levers.

[6] ID.—INTENT TO STEAL—QUESTION OF FACT—EVIDENCE.—In such prosecution, the question of defendant's intent was one of fact to be proven just like any other fact in the case—by the acts and the admissions of the defendant and by other circumstances, and if from such evidence the jury was satisfied beyond a reasonable doubt that defendant intended to steal the automobile, so far as the conclusion reached by the jury in that regard is concerned, it is final and conclusive; and the jury's conclusion that defendant intended to steal the automobile was not only warranted and justified by the testimony of the witnesses and the physical facts presented, but it is the only logical conclusion that could have been deduced from the evidence.

[7] ID.—ACQUAINTANCESHIP OF DEFENDANTS—CONSPIRACY—EVIDENCE. In such prosecution, where the people claimed that a conspiracy to commit grand larceny existed between defendant and his codefendant, the fact that said defendant was not only acquainted with his codefendant, but that they were on terms of intimate friendship, was a relevant circumstance in the case tending to prove that a conspiracy existed between them for the purpose of stealing the automobile in question; and there was no error committed in permitting the prosecution to show over defendant's objection, and in rebuttal of defendant's testimony (given on cross-examination) that he was unacquainted with his codefendant, knew him only by sight, that after the defendant was arrested

4.   See 7 Cal. Jur. 877; 8 R. C. L. 278.

7.   See 5 Cal. Jur. 522.

certain letters and papers purporting to be the property of his codefendant, together with three photographs of the latter, were found in defendant's room.

---

(1) 36 C. J., p. 918, n. 28.   (2) 36 C. J., p. 899, n. 34, p. 919, n. 33 New, p. 921, n. 64.   (3) 16 C. J., p. 113, n. 14, p. 116, n. 49. (4) 16 C. J., p. 114, n. 21.   (5) 36 C. J., p. 899, n. 34.   (6) 17 C. J., p. 270, n. 12; 36 C. J., p. 918, n. 28.   (7) 16 C. J., p. 546, n. 1 New; 40 Cyc., p. 2773, n. 40.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Shapiro & Shapiro and Marshall A. Stutsman for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Hamish B. Eddie for Respondent.

HOUSER, J.—In the information the defendants were charged jointly with the commission of the crime of attempting to commit grand larceny, with a prior conviction of a felony.

Defendant Carter appeals from a judgment of conviction and from an order of the court denying his motion for a new trial.

Appellant contends that the judgment is contrary to law, and that the verdict of the jury is not supported by the evidence.

From the record on appeal it appears that the jury was justified in believing the following facts to be true: A man named Shrader, who was the owner of an automobile, parked it near the curb on the street directly opposite a building in which his office was located, and from which place he saw defendant Carter seated in Shrader's automobile, manipulating the levers thereof. At the same time Shrader could hear the "starter gears working in the car." After watching Carter for several minutes, Shrader and a man named James started across the street in the direction of the automobile, and when they arrived near the center of the

street "Carter got out of the car and started to walk down the street." By the time Shrader reached his automobile Carter and his codefendant Booth, who had been standing near Shrader's automobile while Carter was seated therein, were perhaps twenty-five feet away from Shrader, who "motioned" to them and called out "wait a moment," or that he would like to speak to them. Instead of stopping or walking back to where Shrader, James and a uniformed policeman, who had also arrived on the scene, were standing, the two defendants ran down an alley until it intersected with a street; thence along that street until they came to an open garage fronting on the street, on the inside of which garage defendant Booth stopped and was arrested by the policeman. The keeper of the garage testified: "He (Carter) ran into my place of business and I ran after him and told him to stop, if he didn't stop I would shoot; I took out my revolver and told him if he didn't stop I would shoot. He didn't stop, so I shot in the air, and that didn't stop him; so then I went after him. He went in my place of business, in the garage, between Hope and Grand, down through the alley, through the store onto Pico street, around on Pico street to Grand avenue, down on Grand avenue again to the alley, through the alley, and run into the police officer's arms." In the course of Carter's flight, as he rounded a corner, he met Shrader, who attempted to stop him. As Carter was running he was calling out "Stop thief!" When Shrader took hold of Carter's arm, Carter struck Shrader, from whom he escaped and continued to run until, as he turned another corner in the street or alley, he met the same officer who had arrested defendant Booth, whom he had in custody, but which officer immediately arrested defendant Carter. A day or two after the occurrence just narrated, Carter made a statement to the effect that he was not at the wheel of the automobile, but that it was another man, who was an ex-convict, who was seated in the automobile at the time in question. He also said that he and Booth "were walking south on Grand avenue about Tenth street, and that they had followed this party south on Grand where the man got into the Packard car" (the car belonging to Shrader); that he (Carter) was standing about ten feet from this car; that Booth was standing still farther away, and that they "saw the man (Shrader) coming across

the street, and they proceeded away from there''; that the reason why they had left the vicinity was that ''they had been in trouble, and they didn't want to get caught around there with—when possibly an automobile was being stolen—get into more trouble again.'' The statement thus made by Carter was in most respects inconsistent with testimony which he gave on the trial of the case.

It also may be said that defendant Carter and his witnesses gave a plausible explanation of his conduct, which was consistent with his innocence, on the occasion to which reference has been had.

Carter testified in effect that he had no intention of stealing. Shrader's automobile, and his counsel here contend that the facts are insufficient to authorize a jury to find against his positive statement in that regard. [1] But the question of intent is one that must be solved by the jury. [2] The facts (as shown by the evidence), that defendant was seated in the automobile, manipulating the levers thereof; that the starting motor was running; that he got out of the automobile and walked away when Shrader and James approached him; that when ''motioned'' to and called upon to ''wait a moment,'' as Shrader wished to speak to him, after he and James were joined by a uniformed policeman, he did not stop; that he so persistently ran away, even when called upon to stop or that the man who was following him would shoot; that he failed to stop even after a shot was fired; that he ran, not in a direct line, but in a devious course, along and upon different alleys, streets and through storerooms, in a manner evidently well calculated to elude and evade his pursuers; that as he ran he shouted ''Stop thief''; that in his efforts to avoid arrest he struck at least one man in the face with sufficient force and violence to break the cartilage of his nose; that thereafter he continued to try to make his escape until intercepted and arrested by a police officer; and that he made inconsistent and contradictory statements regarding his connection with the affair—argue, if not conclusively, at least presumably, that he was guilty of the offense of attempting to commit grand larceny, as charged in the information.

Appellant urges the point that ''if an attempt to commit a crime be voluntarily abandoned before the act is put in process of final execution, there being no outside cause

prompting such abandonment, then this is a complete defense.''

The assumption that there was a ''voluntary abandonment'' and that there was ''no outside cause prompting such abandonment'' was apparently not shown by the evidence to the satisfaction of the jury. The jury may have concluded that the ''outside cause prompting the abandonment'' was that defendant saw Shrader and James approaching the automobile which defendant was endeavoring to start and surmised that one of them was the owner of the automobile; or, the jury may have been convinced from the evidence that Carter had attempted to steal the automobile, but had failed to do so because he was unable to start it.

[3] There can be no doubt that mere intent by a single individual to commit a crime is not sufficient to amount to a criminal act. However, it is also unquestionable that after the intent has been formed and such intent has been coupled with an overt act toward the commission of the contemplated offense, the abandonment of the criminal purpose will not constitute a defense to a charge of attempting to commit a crime.

In the case of *People* v. *Oates,* 142 Cal. 12 [75 Pac. 337], it is ruled that in a proper case the giving by the trial court of an instruction that ''a person who attempts to commit a crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable for said attempt,'' was not error, as the instruction was substantially in the language of section 664 of the Penal Code.

As is said in the case of *People* v. *Stewart,* 97 Cal. 238 [32 Pac. 8] : ''The fact that he (defendant) abandoned his wicked purpose upon the approach of other parties has not the slightest tendency to purge him of the legal consequences of his criminal conduct. If an assault with the intent here alleged is made, it is no less a crime, though the aggressor should abandon his intentions before the consummation of the act, by reason of the pains of a stricken conscience alone.'' To the same effect see: *People* v. *Johnson,* 131 Cal. 511 [63 Pac. 842] ; *People* v. *Dong Pok Yip,* 164 Cal. 143 [127 Pac. 1031] ; *People* v. *Bowman,* 6 Cal. App. 749 [93 Pac. 198].

[4] it is also contended by appellant that no overt act was shown on the part of defendant. The authorities appear

to be harmonious to the effect that mere preparation, however elaborate the acts in connection therewith may be, will not suffice to support an accusation of the commission of an overt act as an essential element in an attempt to commit a crime. Something must be done in addition to the mere laying of the plans or the devising of the means by which it is hoped that the criminal offense may be committed. In the leading case of *People* v. *Stites,* 75 Cal. 570 [17 Pac. 693], where the defendant had conspired with a confederate to place a bomb on the track of a street railroad, it appeared that after constructing the bomb he placed it in his pocket and left his home with the intention of meeting his confederate with the ultimate purpose of carrying out the preconceived scheme to wreck one of the cars belonging to the street railroad company. It was there held that, notwithstanding the fact that each step taken by the defendant carried him just that much farther away from the spot which had been selected for the placing of the bomb, nevertheless it constituted an act which would have ended in the consummation of the criminal offense had there been no intervention of circumstances independent of the will of the defendant. To the same effect in principle are the cases of *In re Magidson,* 32 Cal. App. 566 [163 Pac. 689].; *People* v. *Petaluma,* 18 Cal. App. 131 [122 Pac. 431]; *People* v. *Petros,* 25 Cal. App. 236 [143 Pac. 246]; *People* v. *Mann,* 113 Cal. 76 [45 Pac. 182]; *People* v. *Heinrich,* 65 Cal. App. 510 [224 Pac. 466].

[5] In the instant case the jury was justified in believing from the evidence either that an attempt on the part of defendant to steal the automobile had failed because of his inability to start it, or that he had taken fright and abandoned his criminal purpose for the reason that he feared detection and arrest by Shrader and James whom he saw approaching the automobile as he was manipulating its levers. If in the night-time a man had attempted to pry open a window in a house not belonging to him and while so engaged had seen two citizens and a policeman approaching him and thereupon had left the house, and on being called upon to "wait a moment," instead of complying with such request had run away and thereafter conducted himself as did the defendant on the occasion here in question, no one

could doubt the intention of the man who was trying to break into the house.

[6] The decision of the question of the criminal intent necessary to be attributed to defendant in order that he should be lawfully declared guilty of an attempt to commit grand larceny rested wholly with the jury. It was one of the component parts necessary to the commission of the offense with which defendant was charged. What defendant's intention was could not be mathematically demonstrated. It was a question of fact to be proven just like any other fact in the case—by the acts and the admissions of the defendant and by other circumstances. If from such evidence the jury was satisfied beyond a reasonable doubt that defendant intended to steal the automobile, so far as the conclusion reached by the jury in that regard is concerned, it is final and conclusive (*People* v. *Barker,* 137 Cal. 557 [70 Pac. 617]; *People* v. *Johnson,* 131 Cal. 511 [63 Pac. 842]); and in the case at bar such decision was not only warranted and justified by the testimony of the witnesses and the physical facts presented, but, manifestly, it is the only logical conclusion that could have been deduced from the evidence.

[7] Defendant was a witness in his own behalf. On cross-examination he was asked how long a time he had known his codefendant Booth. He replied in substance that he was unacquainted with him and knew him only by sight. In rebuttal thereof, over defendant's objection, the prosecution showed that after defendant Carter was arrested certain letters and papers purporting to be the property of Booth, together with three photographs of Booth, were found in Carter's room. Appellant contends that the action of the court in overruling defendant's objection and in admitting such evidence was prejudicial error. It is suggested that whether or not defendant was acquainted with Booth was collateral to the issue; and the principle that there can be no impeachment on such matters is invoked. It should be remembered, however, that by the information defendant Carter was charged jointly with defendant Booth. The prosecution claimed that a conspiracy to commit grand larceny existed between the two defendants.

In the case of *People* v. *Childs,* 127 Cal. 363 [59 Pac. 768], where the defendant Childs was charged jointly with

a man by the name of Piggott, the question here presented by appellant was ruled on as follows:

"The court did not err in permitting the prosecution to show that Childs and Piggott had been frequently seen together on occasions other than the one at which the larceny is alleged to have been committed. The evidence tended to show that Childs committed the larceny by aiding and abetting Piggott in taking the stolen property from the person of the complaining witness. It was necessary, therefore, for the prosecution to show that the defendants were co-conspirators in the commission of the crime; and it cannot be said that the fact of their being seen frequently together was entirely irrelevant, and did not tend in any degree whatever to establish the conspiracy." And so it may be said in this case that the fact that defendant Carter was not only acquainted with defendant Booth, but that they were on terms of intimate friendship, was a relevant circumstance in the case tending to prove that a conspiracy existed between them for the purpose of stealing the automobile referred to in the evidence.

The case of *People* v. *Tiley,* 84 Cal. 651 [24 Pac. 290], which, as to the point raised by appellant, is to the effect that "a party cannot cross-examine his adversary's witness upon irrelevant or collateral matters for the purpose of eliciting something to contradict or impeach him"—is clearly distinguishable in its facts from those presented in the case at bar, in that in the Tiley case the person regarding whom the defendant was asked as to his acquaintance was a wholly disinterested person and apparently connected with the action only as a witness; while in the instant inquiry, as heretofore mentioned, the individual as to whom the attention of defendant was directed by the question was a co-defendant with the defendant on trial and the question was asked for the purpose of tending to establish that a conspiracy existed between the two defendants.

We perceive no error in the record. The judgment and the order denying the motion for new trial are affirmed.

Conrey, P. J., and Curtis, J., concurred.