[Crim. No. 948.   Third Appellate District.—October 16, 1926.]

## THE PEOPLE, Respondent, v. CLIFFORD EDWARDS, Appellant.

[1] Criminal Law—Attempted Larceny — Overt Act Necessary.— To constitute an attempt to commit larceny, there must be some overt act, which, if not intercepted by some intervening cause, would ultimate in the commission of the offense of larceny.

[2] Id.—Overt Acts — Circumstantial Evidence. — Overt acts need not be proven by direct testimony, but may be established by circumstantial evidence sufficient to convince the jury beyond any reasonable doubt.

[3] Id.—Attempted Larceny of Automobile—Overt Acts—Evidence —Verdict.—In a prosecution for an attempt to commit larceny of an automobile, evidence which showed that the car was parked on a city street with the registration certificate strapped to the steering wheel, showing plainly the registered ownership; that the ignition lock had been tampered with; that during the absence of the owner of the car, after the discovery that the lock had been tampered with and upon the return of the owner the defendant was found in the car with his hands on the steering wheel; that in the interval of time elapsing between the discovery that the lock had been tampered with and the return of the owner, the ignition lever had been entirely broken off, coupled with the fact that if the ignition lever were turned entirely over and the lock broken, the car would run, and the fact that defendant was found in a position where he ought not to have been in a car where the ownership could have been discovered, if any · such desire had been manifested, constituted sufficient overt acts to sustain the verdict of conviction.

---

1.   See 7 **Cal. Jur.** 874, 875; 8 **R. C. L.** 277.

[4] ID.—ARGUMENT OF DISTRICT ATTORNEY—FAILURE TO REQUEST IN-
STRUCTION — APPEAL. — The appellate court will not pass upon
alleged objectionable remarks of the district attorney, where the
trial court was not requested to instruct the jury to disregard
such remarks.

(1) 36 C. J., p. 807, n. 63.    (2) 36 C. J., p. 807, n. 63; 42 C. J.,
p. 1369, n. 4.    (3) 42 C. J., p. 1377, n. 74.    (4) 16 C. J., p. 915,
n. 40; 17 C. J., p. 62, n. 94.

APPEAL from a judgment of the Superior Court of
Sacramento County and from an order denying a new trial.
Charles O. Busick, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Mark L. Burns for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of the crime
of attempt to commit larceny alleged to have occurred on the
fourteenth day of July, 1926, in the county of Sacramento.
This appeal is from the order denying his motion for a new
trial and judgment of conviction entered in said cause.
The appeal is based upon insufficiency of the evidence.

The record shows the following facts: That on or about
the fourteenth day of July, 1926, one Dudley Belchamber,
the owner of a certain Buick roadster automobile, parked
the same on Ninth Street, between H and I, at about 8:30
o'clock A. M.; that he returned to the place where the auto-
mobile was parked shortly after 1 o'clock on the same day,
and upon inspection of the machine, found that the switch
lever had been tampered with, that there were marks thereon
which, apparently, had been made by some instrument. · The
marks were similar to such as would be made by pliers.
Mr. Belchamber, after finding his automobile in this condi-
tion, went to see his brother, who was in business a short
distance from where the car was parked.  About five minutes
later, upon returning to the automobile, he found the defend-
ant sitting therein behind the steering wheel.  Mr. Bel-

4.  See 8 Cal. Jur. 508.

chamber first saw the defendant when he was something like half a block away from the automobile. Upon the approach of Belchamber to within six or eight feet of the automobile, the defendant jumped from the car. Being asked what he was doing there, the defendant replied: "Oh, I am leaving a note for a friend to meet me somewhere," and exhibited some kind of a note. Thereupon Mr. Belchamber said: "That does not satisfy me. Let's hunt up an officer and see if you are telling the truth," to which the defendant replied: "No, I have got to go to a ball game." Mr. Belchamber then started in search of an officer and the defendant departed in an opposite direction. Shortly after this occurrence the defendant was arrested and the defendant, Mr. Belchamber, and the officer came back to the automobile, when it was discovered that the switch lever had been broken off. During all of this time the registration certificate of the car was strapped to the steering wheel where it was in plain sight. The defendant's story was to the effect that on a previous evening he was out at Joyland and there met a man named Jack Fallon, whom he had known in' San Francisco; that this Jack Fallon spoke to him about going to a ball game and told the defendant that he would meet him anywhere on Ninth Street between I and J; if he was not there, his car would be parked along there somewhere on Ninth Street; that Fallon said that his car was a Buick roadster. The defendant was asked by Mr. Belchamber to accompany him to an officer to explain the matter and the defendant replied: That Mr. Belchamber had nothing on him; that he had no reason to suspect him of anything. The following questions and answers disclose the testimony of Belchamber upon this point: "Q. What excuse did he give at that time for not wanting an officer to arbitrate the matter? A. Well, he said that I—he told me I had nothing on him, that I had no reason to suspect him of anything like that; that was the only excuse he offered." The defendant's version on the witness-stand of why he did not explain the matter to an officer appears in the transcript as follows: "Now, the reason, then, as I understand it, that you didn't want to have an officer arbitrate this matter, was because you wanted to go to a ball game; was that correct? A. Yes, sir; I didn't see why I should have an officer. I was in a hurry at the time. Q. And what was the reason you

were in a hurry? A. I wanted to see this other man here, and also get to the ball game."

The defendant further testified that Mr. Belchamber, the owner of the car, said that he was connected with the police department and the defendant asked him for his authority. This appears in the transcript as follows: "Q. Well, didn't he want you to go and refer the matter to a police officer? A. But first he says: 'I am a police officer, you better come with me.' I asked him to show his authority. Later he asked me to go to a police officer. He says: 'If you are innocent, you will go with me to the Hall of Justice.'"

The defendant was searched upon his arrest and no tools or implements were found upon his person. The record also shows that if the lock on the automobile had been broken on the inside so that the lever could be turned .over the car would run.

Much stress is laid upon the fact that no pliers or other similar tools were found upon the prisoner. The fact is overlooked, however, that the defendant had ample opportunity during the absence of Mr. Belchamber to find an officer to make away with any such instruments. The record further shows that the defendant had been a resident of Sacramento for about two months and had been engaged as a salesman for a dealer in second-hand tires. Upon the foregoing state of facts, it is argued that no attempted larceny is proven.

[1] In behalf of this contention the case of *People* v. *Carter,* 73 Cal. App. 495 [238 Pac. 1059], is cited as authority for what is necessary to prove such an offense. In that case the facts show that the engine of the automobile had been put in motion and other overt acts looking toward the commission of the offense of larceny had been performed by the defendant. That case, however, does not decide that other acts may not be sufficient to prove the allegations of an information charging an attempt. The law is well settled that there must be some overt act, which, if not intercepted by some intervening cause, would ultimate in the commission of the offense of larceny. (7 Cal. Jur., pp. 874, 875.) [2-3] The facts as recited herein show first that the car was parked on Ninth Street in the city of Sacramento, with the registration certificate strapped to the steering

wheel, showing plainly the registered ownership of the car; that the ignition lock had been tampered with by the use of some kind of instrument; that during the absence of the owner of the car, after the discovery that the lock had been tampered with and upon the return of the owner of the car, the defendant had come upon the scene and was found in the car with his hands on the steering wheel; that in the interval of time elapsing between the discovery that the lock on the car had been tampered with and the return of the owner, the ignition lever, or switch lever, as it is called, had been entirely broken off. This, coupled with the fact that if the ignition lever were turned entirely over and the lock broken, the car would run, establishes clearly that an attempt was being made to put the car in such condition that it would run and the defendant was found in a position where he ought not to have been and in a car where the ownership could have been discovered if any such desire had been manifested. The person named Jack Fallon never appeared on the scene, was not heard of thereafter, and the jury, we think, had a right to conclude that he was mythical. From the foregoing statements we think the jury had a right to conclude that the defendant had tampered with the lock on the automobile in question and that during the few minutes' absence of the owner from the car after his discovery that the lock had been tampered with and the finding of the defendant in the machine upon his return, that the defendant was the person who had attempted to turn the switch lever or ignition switch entirely over, so that the car would run, and in so doing had broken off the switch lever. The doing of these constituted overt acts just as much as putting the engine of the car in motion, as referred to in the case of *People* v. *Carter, supra.* The turning on of the ignition switch was a necessary act before the engine could be started, and when the acts necessary to put the car in motion were begun, overt acts sufficient to sustain the conviction of attempt certainly appear. These acts do not necessarily need to be proven by direct testimony, but may be established by circumstantial evidence sufficient to convince the jury beyond any reasonable doubt. We think the facts in this case establish sufficient overt acts to support the verdict of the jury.

[4]  Objection is also urged to some remarks of the district attorney during the argument of the case to the jury. The record shows, however, that the court was not requested to instruct the jury to disregard such remarks and, therefore, need not be considered here.

The judgment and the order are affirmed.

Hart, J., and Finch, P. J., concurred.