[Crim. No. 82. Fourth Appellate District.—April 28, 1933.]

THE PEOPLE, Respondent, v. CHARLES LOMBARD et al., Appellants.

P. E. Bingman for Appellant Lombard.

C. O. Thompson for Appellant Snyder.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

CAMPBELL, J., *pro tem.*—Appellants are jointly charged in four separate counts in an information filed by the district attorney of San Bernardino County of the crime of (1) criminal conspiracy; (2) attempt to extort money or property; (3) attempt to kidnap for purpose of extortion, and (4) criminal conspiracy. Counts 2, 3 and 4 were based on another and different transaction from that set forth in count 1. At the close of the People's case the two criminal conspiracy charges were dismissed by the court on motion of the district attorney. The jury were left to consider the guilt of each defendant on the charges of (1) attempt to

kidnap for purposes of extortion, and (2) attempt to extort money or property. The jury were instructed by the court that they could not find the defendants or either of them guilty of both charges, but could, if the evidence warranted, find them guilty of one or the other. By their verdict the jury found them guilty of the crime of attempt to kidnap for purposes of extortion. From the judgments of conviction and the orders denying their motions for a new trial the appellants prosecute this appeal upon the grounds: (1) that the verdict is contrary to the evidence and the weight of evidence; (2) that the verdict is contrary to law and the evidence, and (3) the verdict is inconsistent.

It appears from the evidence that prior to October 13, 1932, information reached the public authorities of San Bernardino County that an attempt was about to be made to kidnap, for the purposes of extortion, one or more persons in the city of Redlands, located in that county. This information was received from one Eddie Dow, and also from Helen Griffith. Acting on this information officers of San Bernardino County went to the city of Redlands on the evening of October 13, 1932, arriving there about 6 P. M. The officers were instructed to watch for a certain make of car bearing a designated license number. Before the officers left for Redlands and while they were parked a few blocks from the apartment house in San Bernardino where Snyder and Lombard were staying, a car answering that description and bearing said license number came into view and the officers noted that Eddie Dow was driving and appellants Snyder and Lombard were seated in the car. The officers followed the car to Redlands. After spending some time in Redlands the automobile bearing Eddie Dow and the appellants made the return trip to San Bernardino with the officers following them. As the two cars were nearing San Bernardino the officers noted something that looked like scraps of paper being thrown out of the car occupied by appellants. These slips of paper were recovered by a deputy sheriff and proved to be an extortion note. Appellant Lombard was seen by an officer entering the premises of the intended victim. When the officers searched the car following the arrest of Lombard and Snyder upon their return to San Bernardino, the officers found a ball of heavy twine, two sheets and a couple of pillow-cases in the rear

of the car; also a writing tablet was found and two pieces of paper which had been torn from the writing tablet. On one of these papers were found indentations or impressions of hand printing which, when examined carefully, revealed that they were imprints or impressions made by the one who wrote or printed the extortion note which the appellant Lombard had prepared. After his arrest, and while at the county jail, the appellant Lombard prepared for the officers at their request samples of his handwriting and printing. These, when compared with the ransom note, proved that Lombard was the writer thereof. Appellant Snyder accompanied officers to a cabin located at Santa Susanna the day following his arrest and told the officers that he and Dow were going to take care of the intended victim at this cabin and that the appellant Lombard was to be the go-between and make the contact with the intended victim's family. Eddie Dow, who played the part of a feigned accomplice in this transaction, testified that he drove Snyder and Lombard to Redlands and that he and Snyder stayed in the car while Lombard went to "scout his house; I didn't know where the house was only from what he had said; and he had a note, and made out the note, and was going over to the house to scout there to see if everything was clear and who was at home". After an interval, Lombard returned and said: "The place is hot; let us get out of here". They left and returned to San Bernardino. Dow further related that on the way to Redlands that night plans were outlined by appellants Lombard and Snyder as to how they were going to obtain the intended victim and how they were going to handle him. The plans were detailed in full by the testimony of Dow. Helen Griffith, who owned the apartment house where appellants Snyder and Lombard stayed for some time prior to October 13, testified that prior to October 13th she had frequently heard appellants Snyder and Lombard discuss the proposition of kidnaping someone in Redlands.

This brief *résumé* of the facts of the case is sufficient to disclose that the evidence was ample to justify the verdict of the jury and the judgments pronounced thereon.

Appellant Snyder, testifying in his own behalf, denied any knowledge of the attempted kidnaping or any intentional participation therein. This merely created a conflict

in the evidence which was resolved against the appellant, first by the verdict of the jury, and later by the court upon hearing his motion for a new trial. An "attempt" to commit a crime is generally defined as an act done with the intention of committing a crime, and tending to, but falling short of the thing intended. The endeavor to commit the crime must be carried beyond mere intention and mere abstract preparation, but falling short of the execution of the ultimate design.

In *People* v. *Petros,* 25 Cal. App. 236 [143 Pac. 246, 249], quoting from 2 Bishop on Criminal Procedure, paragraph 71, it is said: "An attempt to commit a crime is compounded of two elements (1). The intent to commit, and (2). A direct ineffectual act done towards its commission."

Acts, amounting to mere preparation for the commission of a crime, if unaccompanied by some overt act toward the actual commission, do not amount to an attempt and cannot be punished as such. But if there is an intent and preparation, and at least one direct ineffectual act toward the actual commission of the offense after the preparations are made, then an attempt to commit the crime has been made. (*People* v. *Mann,* 113 Cal. 76 [45 Pac. 182]; *In re Magidson,* 32 Cal. App. 566 [163 Pac. 689]; *People* v. *Gilbert,* 86 Cal. App. 8 [260 Pac. 558]; *People* v. *Lanzit,* 70 Cal. App. 498 [233 Pac. 816].)

The evidence here clearly establishes the intentions of the parties to kidnap the intended victim for the purpose of extorting money, and it amply shows the preparations that were made to carry out their intent, namely the preparations made at the cabin in Santa Susanna Pass, the buying of groceries, the providing of the means of tying and gagging the victim while taking him there, and securing the use of Dow's car and his services as driver. In addition the extortion note was written. Added to this is the one overt act made to carry out the intent and to utilize the preparations made for the kidnaping, namely, the trip to Redlands for the avowed purpose of delivering the extortion note, and at the same time seizing and carrying away the intended victim.

Appellants contend that the verdict is contrary to law and the evidence because a conviction cannot be had on the uncorroborated testimony of an accomplice. The

witness, Eddie Dow, was unquestionably a feigned accomplice and his testimony as a matter of law required no corroboration. (*People* v. *Keseling,* 35 Cal. App. 501 [170 Pac. 627]; *People* v. *Spaulding,* 81 Cal. App. 615 [254 Pac. 614].) .

Appellants further contend that the verdicts were inconsistent in that the jury found the defendants guilty of the crime of attempt to kidnap for the purpose of extorting money and yet found them not guilty of the crime of attempt to extort money or property. They contend that such verdicts are inconsistent because the date of both such alleged offenses are the same and the person to be kidnaped for the purpose of extortion is the same as the one named as the intended victim in the extortion charge, and the amount of money involved in each is the same.

The offense of attempt to kidnap for the purpose of extortion is an "attempt" to commit the crime defined in section 209 of the Penal Code, which section provides as follows:

"Every person who maliciously, forcibly, or fraudulently takes or entices away any person with intent to restrain such person and thereby to commit extortion or robbery, or exact from the relatives or friends of such person any money or valuable thing, is guilty of a felony, and shall be punished therefor by imprisonment in the state's prison for life or any number of years not less than ten."

The offense of attempt to extort money or property is defined in section 524 of the Penal Code as follows:

"Every person who attempts, by means of any threat, such as is specified in section 519 of this code, to extort money or other property from another is punishable by imprisonment in the county jail not longer than one year or in the state prison not exceeding five years, or by fine not exceeding five thousand dollars, or by both such fine and imprisonment."

It is to be noted that the penalty for the crime of the commission of the latter offense is not the same as that provided for the crime of attempt to kidnap for the purpose of extortion. These offenses being separately defined, a different penalty prescribed for each, and not being classed as "included offenses" by the code are in no sense identical. Hence the verdicts herein were not inconsistent. (*People* v. *Powell,* 50 Cal. App. 436 [195 Pac. 456]; *People* v.

*Pickens,* 61 Cal. App. 405 [214 Pac. 1027]; *People* v. *Day,* 199 Cal. 78 [248 Pac. 250].)

██ Appellants contend that the information was demurrable upon the ground, "that more than one offense is charged in count II of the information". There is no merit to this contention, however, because the preliminary statement preceding the charging of the third and fourth offenses set forth in the information, viz., "being a different statement of the same cause of action set forth in the second count of this information" clearly indicates, we think, that this constitutes an added separate and distinct count, rather than a portion or subdivision of count II. (*People* v. *Danford,* 14 Cal. App. 442, 449 [112 Pac. 474].)

Appellant Snyder contends that the court erred in overruling objections to the cross-examination of said appellant on the matters allegedly not covered by the direct examination. Said appellant testified on his own behalf in answer to questions propounded to him on direct examination. He stated his name, his age, denied he had any knowledge of the fact that the defendant Lombard intended to deliver a letter or document to the intended victim, denied any knowledge of the letter having been written, denied that he ever discussed with Dow or Lombard or any other person the matter of kidnaping the intended victim.

██ The defendant, testifying in his own behalf, is to be treated the same as any other witness and the prosecution has a right to question him in a manner that may elicit answers which tend to contradict the evidence adduced on direct examination, or which tend to weaken or modify its effect. It is proper in a criminal case to cross-examine a defendant upon any relevant and material matter testified to on his direct examination, for the purpose of showing conduct or statements inconsistent with his direct testimony. ██ It appears from the record that the matters sought to be elicited by the cross-examination were sought in good faith for the purpose of contradiction of direct testimony of the said appellant on his direct examination, and hence he cannot now make a valid complaint.

It is our opinion that the rulings of the court were proper. ██ Appellant Snyder contends that the court erred in refusing to give his requested instructions Nos. 1 and 17. These instructions are not reproduced in the brief nor is

the subject matter presented. However, we have examined them and find that the subject matter of instruction No. 17 was covered by an instruction given by the court in instruction No. 9 and that instruction No. 1, requested by defendant Snyder and refused, in effect instructed the jury that any statements made by either defendant concerning the alleged offenses, after the commission of the same, and out of the hearing of the other defendant, could not be considered by the jury as any evidence against the other defendant. This instruction is, in general, a correct statement of the law, but the jury was repeatedly admonished to that effect during the trial, whenever statements made by one defendant outside the presence of the other and after their arrest, were sought to be introduced in evidence. Hence the defendant Snyder suffered no prejudice through failure of the court to give his instruction No. 1, at the close of the trial.

The evidence being sufficient to sustain the verdicts and judgments and no error appearing in the record, the judgments and orders appealed from should be affirmed. It is so ordered.

Barnard, P. J., and Marks, J., concurred.