281 P.2d 297]

[Crim. No. 1017.   Fourth Dist.   Mar. 28, 1955.]

## THE PEOPLE, Respondent, v. WALTER OTTO SCHROEDER, Appellant.

John Barry, Virgil H. Roick and Davies & Burch. for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

(1)

MUSSELL, J.—Defendant was charged with attempted grand theft and it is alleged in the information filed by the district attorney of San Diego County that on or about March 30, 1954, defendant "did wilfully, unlawfully and feloniously attempt to take the personal property of the California State Department of Public Health, consisting of the sum of Four Hundred Twenty-five ($425) lawful money of the United States of America." A jury trial resulted in a verdict finding the defendant guilty as charged. His application for probation was granted and his motion for a new trial was denied. Since no judgment was entered, the purported appeal from the judgment will be dismissed. (*People* v. *Jones*, 36 Cal.2d 373, 375 [224 P.2d 353].)

On March 30, 1954, Inspectors Leake and Worley of the State Department of Public Health visited appellant's workshop in Escondido where appellant was employed by an electrical contractor. The inspectors represented to appellant that they were naturopaths from San Jose. They told him they had heard he had a device that was effective in the treatment of a good many diseases and that they had heard of this device through another naturopath in San Jose. Appellant stated that he had "devices" but that he was not "pushing" them due to a lawsuit pending in San Francisco. Appellant then exhibited a machine called an "analyzer" and explained its use. He stated that it was a combination diagnostic and treatment machine for use by the practitioner in his office. He further stated that the device was very effective in treating cancer, tumor, gallstones, ulcers, heart, vascular and other diseases and that the machine sold for $350. One of the inspectors then stated to appellant that if the machine did everything that it was represented to do, it would be an excellent piece of equipment in his office. He then asked appellant if he could explain how they could operate the machine provided they purchased it that day. After further explaining the use of the "analyzer" appellant exhibited another machine called an "energizer" and explained that it was a home treatment device which would give all the treatments as previously determined for the patient by the use of the "analyzer." Inspector Worley stated to Leake in the presence of appellant that he had a "patient that, if this machine is what it says it will do, will certainly warrant us purchasing it." During the discussion about the price of these machines Worley said "Well it would be too bad to be

down here without . . . if these machines would do everything they said they would do, without taking one back.'' The inspectors then discussed the possibility of their taking two of the devices for $250 and paying the balance in 10 days. Appellant agreed to this procedure and the inspectors handed him $250 in marked money belonging to the State Department of Public Health. Appellant took the money, counted it, placed it on the table and gave the inspector a receipt therefor. Inspector Leake then identified himself and placed appellant under arrest. One of the inspectors then picked up the money and counted it and a search of appellant's premises was made by the inspectors and other officers.

Appellant stated to the officers that he had sold around 500 machines within a period of five years; that he had sold the ''analyzer'' and ''energizer'' to chiropractors; that he had a present existing arrangement with a chiropractor in Escondido and supplied him with these devices, which he either rented or sold.

At the trial several expert witnesses who were called by the prosecution testified at length concerning the construction of these devices and the results of experiments with them. A physician and medical officer of the Federal Food and Drug Administration gave his opinion as an expert and stated that there was no value to the ''analyzer'' in the diagnosis of diseases and that the ''energizer'' had no value in the treatment of any disease. A like opinion was given by an expert in internal medicine.

There was evidence that during and prior to 1953 appellant used devices similar to the ''analyzer'' in evidence on various individuals; that the person to be diagnosed held in his hands a plate which was attached by a wire to the device and appellant then operated the machine; that appellant diagnosed these individuals as suffering from ulcers, cysts, trichinosis, tumors, heart condition, inactive thyroid, sluggish liver, infections in the head and toxicosis; that appellant told the patients that if they used his ''energizer'' it could cure all of these conditions.

Appellant produced character witnesses who testified as to his good reputation and several witnesses who had been diagnosed by him testified they had used the device and believed they had been benefited therefrom.

Two botanists testified that they had performed experiments with an ''energizer'' and concluded that the ''energizer'' had a definite effect on living organisms, particularly para-

moecia; they also testified that they used the machine and were helped by it.

Appellant testified that he first became interested in electronic devices in 1943 or 1944 and had spent his spare time since then working with them; that he built the "energizer" and tried the device on himself and family; that they obtained relief from their ailments and that he had built four or five hundred machines. He denied telling any of his patients that the machines would cure anything and stated that he told them to take the machine and try it; that the cure would come from the body itself, all he was trying to do was correct the cause. Appellant further testified that he did not tell the inspectors anything that he did not believe was true and that he had no intention of deceiving them and did not make any statements about the devices on which he intended them to rely. ■ In this connection Inspector Leake testified that he did not rely in any way on any of the statements made by appellant about what the "analyzer" and "energizer" would do and that he never intended that appellant could keep the marked money. Inspector Worley testified that he and Leake had planned to represent themseves as naturopathic doctors and attempt to purchase the devices from appellant; that from information they had received from complainants he did not think there was any value in the "energizer" and that at the time of his visit to appellant's place of business he did not change his opinion; that he made a list of the serial numbers of the money before he left San Bernardino in order to identify the money and that he did not intend to let appellant get the money away from him "permanently."

Appellant first contends that he received the money on the insistence and with the consent of the prosecuting witnesses and pursuant to their scheme and plan; that their counsel, inducement and cooperation constituted entrapment; that theft and attempt to commit theft being individual personal wrongs, no crime was proven. We do not deem it necessary to pass upon the question of whether the acts and conduct of the inspectors herein amounted to entrapment since we conclude, on the basis of the decision in *People* v. *Werner,* 16 Cal.2d 216 [105 P.2d 927], that the evidence herein will not support the conviction of appellant upon the charge of attempted grand theft.

In the Werner case, as here, the offense charged was attempted grand theft. Werner and his wife were convicted and Werner appealed from the order denying his motion for

a new trial. This order was reversed on appeal. McNeil, the prosecuting witness therein, was charged wth grand theft and bound over to the superior court. Werner represented to McNeil that for about $2,500 he could get a deputy district attorney to "kick this case out of the district attorney's office," provided that some settlement be made with a Mrs. Bovell, the complaining witness in the McNeil case. McNeil called at the office of the deputy district attorney and arrangements were made to install a dictaphone in McNeil's home to listen to future conversations between McNeil and the Werners. Mrs. Werner told McNeil that she would handle the money and arranged a meeting with him without the knowledge of Werner and it was agreed at this meeting that McNeil would "slip" Mrs. Werner $10,000 in an envelope in the absence of Werner. Subsequently the Werners called on McNeil and during Werner's absence from the room Mrs. Werner asked McNeil to give her the money. He then gave her an envelope purportedly containing the money and she pinned the envelope inside her dress. This envelope, however, did not contain anything except two $1.00 bills and eight pieces of paper cut to the size of $1.00 bills. It was not McNeil's money but had been handed to him by the district attorney's office investigator for the purpose. The Werners then left the McNeil home and as they walked out in the yard they were arrested by deputies from the district attorney's office and upon threat of search, Mrs. Werner produced the envelope from her dress. The court, in discussing the elements of attempt to commit a crime and the difference between preparation and the actual attempt said:

"It is settled that an attempt to commit a crime is compounded of two elements, viz., intent and a direct ineffectual act done toward its commission. It is equally well settled that there is a material difference between the preparation antecedent to an offense and the actual attempt to commit it. The preparation consists of devising or arranging the means or measures necessary for the commission of the offense, while the attempt is the direct movement toward its commission after the preparations are made. In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances. (*People* v. *Anderson,* 1 Cal.2d 687 [37 P.2d 67] ; *People* v. *Mann,* 113 Cal. 76 [45 P. 182] ; *People* v. *Lombard,* 131 Cal.App. 525, 530 [21 P.2d 955] ; 14 Am.Jur. 813-818.)" These rules are

again set forth in *People* v. *Gallardo*, 41 Cal.2d 57 [257 P.2d 29], where the court said: "In order to establish an attempt, it must appear that the defendant had a specific intent to commit a crime and did a direct, unequivocal act toward that end; preparation alone is not enough, and some appreciable fragment of the crime must have been accomplished. (*People* v. *Buffum*, 40 Cal.2d 709, 716 [256 P.2d 317]; *People* v. *Werner*, 16 Cal.2d 216, 221-222 [105 P.2d 927]; *People* v. *Miller*, 2 Cal.2d 527, 530-532 [42 P.2d 308, 98 A.L.R. 913].)" See also *People* v. *Wallace*, 78 Cal.App.2d 726, 742 [178 P.2d 771].

In the Werner case the court held that the record did not disclose any direct, ineffectual act on the part of Werner whereby but for extraneous circumstances he would have perpetrated the offense of grand theft, and further said:

"However, even if we were to concede, without deciding, that the record sufficiently discloses both an intent and a direct ineffectual overt act by appellant toward the commission of a theft of the $2,500, the evidence still would not warrant his conviction either of theft or attempted theft for the reason that the prosecuting witness not only consented to the taking or attempted taking but actually delivered the property or money into the hands of the alleged offender. In so declaring, we are not unmindful that it often becomes necessary to resort to artifice in order to enforce the law and punish its violation. We have no quarrel with the settled rule that if the criminal intent originates in the mind of the accused and the criminal offense or attempt thereat is perpetrated, the fact that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him constitutes no defense. The cited rule is without application here. We do not regard this as a case of improper entrapment but rather as one involving an offense or an attempt to perpetrate an offense the commission of which to be punishable must be without the consent of the owner of the property. The pertinent rule is stated, with citation of supporting authorities, in 15 American Jurisprudence 26, section 336, as follows: 'In the case of those crimes into which enters as an essential element the violation of individual rights of persons, the entrapment must not be under such circumstances as will amount to the consent of the person affected, or a necessary ingredient of legal guilt, the want of such consent, will be lacking, and the crime will not have been committed.' In other words, when a person knows or

suspects that a crime affecting him is about to be committed, he may, without being deemed to have consented thereto, remain passive and make no effort to prevent its commission, to the end that the criminal may be apprehended, but he may not actively participate, as here, to the extent of personally delivering his property or what purports to be his property to the offender and upon a prosecution for the theft or attempted theft thereof urge that it was taken or attempted to be taken without his consent—an element essential to a conviction therefor. . . .

''We are satisfied that there cannot be a theft or an attempted theft of a person's property when voluntarily and without compulsion of any sort, and uninfluenced by any false or fraudulent representations, he actively hands it over to the alleged thief for the purpose of apprehending him as a thief or as an attempted thief—however reprehensible the latter's intent may be—for under such circumstances the essential element of lack of consent is missing. As already stated, the prosecuting witness herein was not induced by any trick or device or false representation upon which he had placed reliance to part with his property. Instead, as shown, he had concluded that the Werners were not sincere or honest in their motives and for the purpose of securing their conviction he went far beyond the passive assistance that is permitted under the authorities to apprehend a potential offender, going to the extent of actively delivering or handing over his property or what purported to be his property, thereby depriving the offense, if any, of the essential element of lack of consent of the owner. Surely, it could not be held, all the other circumstances remaining the same, that appellant would be guilty of theft of the $2,500 if McNeil, the prosecuting witness, actually had placed that amount of money in an envelope and actively handed it over to the appellant for the purpose of apprehending him as he left the house. Under the cited circumstances, the money would have been voluntarily delivered to the appellant with the consent of the owner uninfluenced by artifice, device or false representation, precluding any theft thereof. The same is equally true as to the charge of attempted theft thereof based on the owner's substitution and delivery of something other than the $2,500. We are of the opinion that the evidence will not support appellant's conviction.''

In the instant case it clearly appears that one of the inspectors voluntarily, actively and uninfluenced by any false

or fraudulent representations handed the appellant $250 in marked bills for the purpose of apprehending him as an attempted thief. Under the circumstances and in view of the holding in the Werner case, we conclude that the evidence is insufficient to sustain a conviction herein of the crime of attempted grand theft. In view of this conclusion it is unnecessary to pass upon the other points raised by the appellant.

The order denying appellant's motion for a new trial is reversed and his purported appeal from the "judgment" is dismissed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied April 11, 1955, and respondent's petition for a hearing by the Supreme Court was denied April 27, 1955.