[Civ. No. 24091.   Second Dist., Div. One.   Oct. 29, 1959.]

JAMES GODFRED FAUSTINA, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Crispus A. Wright for Petitioner.

William B. McKesson, District Attorney, Jere J. Sullivan, Lewis Watnick, Harry Wood and Ralph F. Bagley, Deputy District Attorneys, for Respondent.

SHEA, J. pro tem.*—Petitioner is charged with an attempt to receive stolen property. A motion to set aside the amended information having been denied, petitioner now seeks this writ under section 999a of the Penal Code.

The testimony taken at the preliminary hearing which is material to this decision may be summarized as follows:

Six automobile tires were stolen from a tire company on June 29, 1959, by Paul Woods and one Lewis. Within a few minutes after the theft they were arrested. The police took possession of the tires. Later that same day the tires were identified by employees of the tire company as the tires that had been stolen from their place of business.

At, or shortly after his arrest, Woods told the arresting officers that he was taking the tires to sell to Mr. Faustina

---

*Assigned by Chairman of Judicial Council.

(the petitioner). Mr. Faustina was the operator of a service station. Woods testified that he had had a conversation with Faustina about one month before, at which conversation Faustina had told Woods that he needed some tires of a certain size.

After Woods told the arresting officers that it was his intention to sell the tires to Faustina, the officers suggested that he should proceed with his plans and complete the sale.

The evidence also discloses that before the sale to Faustina, and while Woods was in custody, although the officers made no specific promises to Woods, they did tell him that if he would cooperate with them they would do what they could to help him have the charge against him reduced from a felony to a misdemeanor. After the arrest of Faustina and before the preliminary hearing, Woods plead guilty to a charge of petty theft.

On July 1, 1959, Officer Burley put the tires in the back end of an automobile and, with Woods accompanying him, drove to Faustina's service station. This was about 9 o'clock in the morning. Faustina was not there when they arrived. They were met by an employee in the service station and Woods informed the employee that he had some tires for Faustina. At Woods' request the employee made a telephone call and then handed the phone to Woods. It was Woods' testimony that he talked on the phone to Faustina and told him that he (Woods) had six tires and wanted to know if Faustina would be interested in them. Faustina replied that he would be. Faustina then told Woods that he would be coming to the service station in about an hour and that Woods should meet him there at that time.

Officer Burley and Woods then drove away from the service station and returned shortly before 10 o'clock. Faustina was not at the station when they returned but arrived shortly thereafter. He then walked over to the car in which Burley and Woods were sitting and looked at the tires in the back of the car. After a short conversation, Faustina told Burley and Woods to drive around the block and upon returning to the station to park in the wash rack. They did as he directed.

After the car was parked in the wash rack Faustina indicated an adjacent storeroom in which the tires were to be placed. As Woods and Burley removed the tires from the car they handed them to Faustina who rolled them into the storeroom.

After the tires had been unloaded and placed in the store-

room Faustina then told Woods and Burley to drive around the block again and upon their return to park by a coke machine on the service station lot. He stated that he then would have the money ready for them. Again they did as Faustina directed. When they returned to the station Faustina approached the car and handed Woods $60 in currency. At this time Faustina told them that he could use two tires of a particular size. He further told them that when he got rid of what he had "we could bring him anything we liked."

While these events were transpiring, Officer Burley was equipped with a small short-wave radio transmitter on his person. Another officer, Burton, was parked in a car about 150 to 200 feet from the service station. Officer Burton was equipped with a radio receiving device set to receive conversations broadcast by Burley's transmitter. Burton testified that he observed the activity at the service station and that he had heard portions of the conversation between Woods and Faustina over his radio receiver.

As soon as Burley and Woods left the service station Burton went to the station, identified himself as a police officer and told Faustina that he was under arrest for receiving stolen property. He informed Faustina that the tires were stolen and took possession of them. Faustina denied ever having seen the tires and stated that he had just come to work and knew nothing about them.

Officer Burton also testified that he had seen the tires in the evidence room at the police station prior to the time that he took possession of them at Faustina's service station.

It should be noted that Faustina was originally charged with receiving stolen property but at the time the matter came up for hearing on a motion under section 995 of the Penal Code the deputy district attorney moved to amend the information by interlineation, to allege an attempt to receive stolen property. The information was so amended and, by stipulation, the motion under Penal Code, section 995, was made to the amended information.

Except for the question of whether or not the tires in question were "stolen" property, all of the elements necessary to sustain a charge of attempt to receive stolen property are present. This is not questioned by counsel for the petitioner. His sole contention is that from the time the tires were taken by the police and identified by the employees of the tire company they lost their character as "stolen" property and became "recovered" property. Because the tires

were not "stolen" at the time Faustina purchased them, he could not receive "stolen" property. He argues that even if Faustina bought the tires it would be no crime hence there could be no offense in attempting to do something that is not a crime.

On the basis of the foregoing, the issue to be decided may be stated as follows: Assuming, without deciding, that the character of the property was changed from "stolen" to "recovered" property and that therefore a prosecution for receiving stolen property would not lie, is there reasonable or probable cause to hold the petitioner for an attempt to receive stolen property.

In support of his position petitioner cites the case of *People* v. *Jaffe,* 185 N.Y. 497 [78 N.E. 169, 7 Ann.Cas. 348, 9 L.R.A. N.S. 263]. This case is very similar to the case at bar and is quite persuasive

In the Jaffe case the thief was stealing from his employer and selling the stolen merchandise to the defendant. The employer caught the thief and recovered the merchandise. Then by arrangement with the police the employer caused the employee to take the recovered merchandise to the defendant. The defendant purchased it for approximately half-price. After a judgment of conviction the court of appeals reversed the judgment and held that the merchandise had lost its character as stolen merchandise before it was purchased by the defendant and since it was not "stolen" he could not be convicted of an attempt to receive stolen property even though he thought it was stolen and intended to purchase it as stolen property.

The rule of the Jaffe case has been the subject of much criticism and discussion. (70 Harvard L. Rev. 422, 439; 41 Harvard L. Rev. 821, 853; 40 Yale L. Jour. 53, 77.) Certainly its application should be limited. As has been pointed out before (*State* v. *Elliott,* 206 Ore. 82 [289 P.2d 1075]) it is difficult to reconcile the Jaffe case with the case of *People* v. *Gardner,* 144 N.Y. 119 [38 N.E. 1003, 43 Am.St.Rep. 741, 28 L.R.A. 699].

In the Gardner case there was a conviction of an attempt to commit the crime of extortion. The conviction was sustained by the court of appeals. In that case the defendant sought to obtain money from a woman under a threat to accuse her of a crime. In New York an essential element of the crime of extortion is that the money be paid under the

compulsion of fear. The prosecutrix was in fact a decoy of the police and had no fear of being accused. It was argued that since there was no fear in the mind of the prosecutrix there could be no extortion. In sustaining the conviction the court of appeals said: "The condition of Mrs. Amos' mind was unknown to the defendant. If it had been such as he supposed, the crime could have been, and probably would have been, consummated. His guilt was just as great as if he had actually succeeded in his purpose. His wicked motive was the same, and he had brought himself fully and precisely within the letter and policy of the law. This crime as defined in the statute depends upon the mind and intent of the wrongdoer, and not on the effect or result upon the person sought to be coerced."

The rule of the Gardner case has been cited with approval by the Supreme Court of California in the recent case of *People* v. *Camodeca,* 52 Cal.2d 142, 146 [338 P.2d 903], and is controlling in the case at bar.

Petitioner also relies upon *People* v. *Werner,* 16 Cal.2d 216 [105 P.2d 927] and *People* v. *Schroeder,* 132 Cal.App.2d 1 [281 P.2d 297]. Both of these cases have been overruled on this point by the Camodeca case, *supra,* and hence are not controlling authority.

In the instant case the tires had been stolen, the defendant purchased them believing that they were stolen and with the intent to keep them from the true owner. Only because of the alertness and efficiency of the police officers was he unsuccessful in his efforts to commit a crime. Even though we say that, technically, the tires were not "stolen" nevertheless the defendant did attempt to receive stolen property. There is clearly reasonable and probable cause to sustain the information.

The alternative writ of prohibition is discharged and the petition is denied.

Lillie, Acting P. J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 23, 1959.